**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF HAWAII, ex rel. David M. Louie, Attorney General, *Plaintiff-Appellant*, v. HSBC BANK NEVADA, N.A., Defendant in 1:12-cv-00266-LEK-KSC; HSBC CARD SERVICES, INC., Defendant in 1:12-cv-00266-LEK-KSC; CAPITAL ONE BANK (USA), N.A., Defendant in 1:12-cv-00268-LEK-KSC; CAPITAL ONE SERVICES, LLC, Defendant in 1:12-cv-00268-LEK-KSC; CITIGROUP, INC., Defendant in 1:12-cv-00271-LEK-KSC; CITIBANK, N.A., Defendant in 1:12-cv-00271-LEK-KSC; DEPARTMENT STORES NATIONAL BANK, Defendant in 1:12-cv-00271-LEK-KSC; DOE, 1-20, *Defendants-Appellees*. | No. 13-15611 D.C. No. 1:12-cv-00263-LEK-KSC OPINION |

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted
June 10, 2014—Honolulu, Hawaii

Filed August 1, 2014

Before: William A. Fletcher, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

---

## SUMMARY[*]

---

### National Bank Act / Preemption

Reversing the district court's denial of a motion for a remand to state court, the panel held that neither the federal question statute nor the Class Action Fairness Act provided the district court with subject matter jurisdiction over the Hawaii Attorney General's complaints against six credit card providers, alleging that each violated state law by deceptively marketing and improperly enrolling cardholders in add-on credit card products.

Joining the Fifth Circuit, the panel held that the Attorney General's claims were not preempted by National Bank Act provisions completely preempting state law claims challenging interest rates charged by national banks. The panel held that the district court did not err by relying on declarations submitted by the card providers describing their

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

payment protection plans.  The panel declined to decide whether payment protection plan fees are interest on a loan under NBA § 85, rather than charges for an independent service, because the complaints did not allege that the card providers charged excessive interest rates.  The panel held that NBA §§ 85 and 86 do not preempt only claims that explicitly invoke a state usury law.  Nonetheless, the complaints' state law claims were not preempted because they did not challenge the "rate of interest" that the card providers charged.  Instead, the state law claims were independent of §§ 85 and 86; the complaints' unfair and deceptive practice claims targeted alleged marketing misrepresentations, and their unjust enrichment claims arose from the purported failure to obtain consent before enrolling consumers in debt protection products.

Agreeing with the Second, Third, and Fourth Circuits, the panel held that CAFA did not provide an alternate basis for jurisdiction because the Attorney General brought civil enforcement actions or common law *parens patriae* suits, rather than class actions, and the complaints specifically disclaimed class status.

_____

## COUNSEL

Laura J. Baughman, J. Burton LeBlanc, IV, and Sherri Ann Saucer (argued), Baron & Budd, P.C., Dallas, Texas; Richard Golomb and Kenneth J. Grunfeld, Golomb & Honik, P.C., Philadelphia, Pennsylvania; L. Richard Fried, Jr. and Patrick F. McTernan, Cronin, Fried, Sekiya, Kekina & Fairbanks, Honolulu, Hawaii, for Plaintiff-Appellant.

Michael C. Bird, Summer H.M. Fergerstrom, and Tracey Lynn Kubota, Watanabe Ing LLP, Honolulu, Hawaii; Julia B. Strickland, David W. Moon, and Jason Sung-Hyuk Yoo, Stroock & Stroock & Lavan LLP, Los Angeles, California, for Defendants-Appellees HSBC Bank Nevada, N.A. and HSBC Card Services, Inc.

James F. McCabe (argued) and James R. McGuire, Morrison & Foerster LLP, San Francisco, California; Margery S. Bronster and Andrew L. Pepper, Bronster Hoshibata, Honolulu, Hawaii, for Defendants-Appellees Capital One Bank (USA), N.A. and Capital One Services, LLC.

Michael Purpura and Michael J. Scanlon, Carlsmith Ball LLP, Honolulu, Hawaii; Noah A. Levine and Robert W. Trenchard, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, for Defendants-Appellees Citigroup Inc., Citibank, N.A., and Department Stores National Bank.

## OPINION

HURWITZ, Circuit Judge:

The Hawaii Attorney General filed complaints in state court against six credit card providers, alleging that each violated state law by deceptively marketing and improperly enrolling cardholders in add-on credit card products. The card providers removed the cases to federal court, and the Attorney General moved to remand. The district court concluded that the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), did not afford a basis for federal jurisdiction. The court, however, found at least one of the Attorney General's claims against each provider

completely preempted by section 30 of the National Bank Act of 1864, 12 U.S.C. §§ 85–86.  The court thus held that it had jurisdiction over the completely preempted claims under the federal question statute, 28 U.S.C. § 1331, and elected to exercise jurisdiction over the remaining claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367.

We hold that neither the federal question statute nor CAFA provides the district court with subject matter jurisdiction.  We therefore reverse with instructions to remand the actions to state court.

## I. Background

### A.

In April 2012, the Hawaii Attorney General filed complaints in state court against six financial institutions—JP Morgan Chase & Co. and Chase Bank USA, N.A. (collectively, the "Chase defendants"); HSBC Bank Nevada, N.A. and HSBC Card Services, Inc. (collectively, the "HSBC defendants"); Capital One Bank (USA), N.A. and Capital One Services, LLC (collectively, the "Capital One defendants"); Discover Financial Services, Inc., Discover Bank, DFS Services, L.L.C., and American Bankers Management Company, Inc. (collectively, the "Discover defendants"); Bank of America Corporation and FIA Card Services, N.A. (collectively, the "Bank of America defendants"); and Citigroup Inc., Citibank, N.A., and Department Stores National Bank (collectively, the "Citigroup defendants"). Discover Bank is a federally insured, state-chartered bank; the other defendant banks are nationally chartered.

The complaints, identical as relevant to this appeal, alleged that the defendants deceptively marketed and enrolled Hawaii cardholders in various debt protection products. These products include payment protection plans, extended warranties for purchased items, identity theft protection plans, stolen card protection, credit score tracking, and payment warranties.

The complaints primarily targeted the payment protection plans. These plans suspend or cancel all or part of a cardholder's obligation to repay an outstanding credit card balance, limit interest charges, or waive late fees upon a qualifying event, such as disability, death, or unemployment. A cardholder purchases a payment protection plan by paying the provider a percentage of the outstanding monthly card balance.

The complaints alleged that the providers: (1) enrolled cardholders in protection plans without their consent; (2) enrolled cardholders who do not qualify for protection plan benefits; (3) confused plan purchasers with deceptive marketing, contract language, and billing; and (4) targeted "vulnerable" populations, including subprime borrowers and the elderly.

The complaints asserted three state law causes of action. Count I alleged that the credit card providers violated sections "480-1 et seq." of the Hawaii Revised Statutes. Although not limited to violations of the Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. ch. 481A, the complaints specifically averred that defendants engaged in "deceptive trade practices" forbidden by that statute. *See* Haw. Rev. Stat. § 480-2 (declaring "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful"); *id.*

§ 481A-3(a)(2), (5), (9), (12) (listing deceptive trade practices). Count II contended that the card providers violated section 480-13.5 of the Hawaii Revised Statutes, which imposes a penalty of up to $10,000 for each deceptive act that is "directed toward, targets, or injures" an elderly person. Count III alleged unjust enrichment because Hawaii consumers "unknowingly pa[id] unauthorized or otherwise improper charges to Defendants."

The complaints requested declaratory and injunctive relief, civil penalties, disgorgement, restitution, attorneys' fees, interest, and "other relief as provided by law." The actions were "brought by the State of Hawaii in its sovereign capacity . . . on behalf of the State and its citizens," as authorized by sections 480-2(d) and 661-10 of the Hawaii Revised Statutes, and also under the State's "*parens patriae* authority." In each complaint, the Attorney General explicitly disavowed that he filed a class action and disclaimed "any such claims that would support removal on the basis of diversity, Class Action Fairness Act of 2005 (28 U.S.C. §§ 1332(d), 1453, 1711–1715), federal question jurisdiction, or any other basis."

## B.

The defendants filed notices of removal in the district court, invoking §§ 1331, 1332(d)(2), and 1367 as the bases for federal jurisdiction. The Attorney General moved to remand each case.

The district court denied the motions to remand. The court first held that CAFA did not afford it jurisdiction. The district court acknowledged that in order to recover damages on behalf of consumers, subsection 480-14(b) of the Hawaii

Revised Statues likely requires the Attorney General to bring a class action.[1]  *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 907 F. Supp. 2d 1188, 1204 (D. Haw. 2012).  Relying on *Washington v. Chimei Innolux Corp.*, 659 F.3d 842 (9th Cir. 2011), however, the district judge held that CAFA requires that a plaintiff "actually invoke" a class action rule or "otherwise label the case a 'class action.'"  *Louie*, 907 F. Supp. 2d at 1205.  Because the complaints expressly disclaimed class status, invoking instead only common law *parens patriae* and section 661-10 civil enforcement authority, the district court concluded that it lacked CAFA jurisdiction.  *Id.* at 1206–07.

But, the district court held that it had jurisdiction over at least one of the claims in each complaint under the complete preemption doctrine.  The district court reasoned that by alleging the card providers had charged "significant fees" for "minimal benefits" and had "increased profits by substantial sums," the Attorney General implicitly challenged the "rate of interest" on outstanding credit card balances.  *Id.* at 1210–12.  Because the National Bank Act completely preempts state laws regulating the interest rates charged by

---

[1] Subsection 480-14(b) states:

> The attorney general of the State shall be authorized to bring a class action for indirect purchasers asserting claims under this chapter.  The attorney general or the director of the office of consumer protection may bring a class action on behalf of consumers based on unfair or deceptive acts or practices declared unlawful by section 480-2.  Actions brought under this subsection shall be brought as parens patriae on behalf of natural persons residing in the State to secure threefold damages for injuries sustained by the natural persons to their property by reason of any violation of this chapter.

nationally chartered banks, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10–11 (2003), the district court held that it had jurisdiction over "at least some" of the claims against the national defendants, and elected to exercise supplemental jurisdiction over all other claims. *Louie*, 907 F. Supp. 2d at 1212–13.

The Attorney General sought leave to file an interlocutory appeal pursuant to 28 U.S.C § 1292(b), raising two questions: (1) "Do the fees charged for the payment protection plans and other ancillary services constitute 'interest' under the National Bank Act?"  (2) "Can the Attorney General's allegations only be characterized as a usury claim challenging the rate or amount of interest . . . ?"  The district court certified both questions, *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059 (D. Haw. 2013), we granted permission to appeal, and the Attorney General timely perfected the appeal.[2]

## II. Standard of Review

"We review de novo a district court's denial of a motion to remand to state court for lack of federal subject matter jurisdiction." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011) (per curiam).  Removal and subject matter jurisdiction statutes are "strictly construed," and a "defendant seeking removal has the burden

---

[2] The district court also held that section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d, completely preempted at least some of the claims against the state-chartered Discover defendants.  The Discover defendants settled while this appeal was pending (as did the Chase and Bank of America defendants).  Because the remaining defendant banks are nationally chartered, the preemptive effect of the 1980 act is no longer at issue.

to establish that removal is proper and any doubt is resolved against removability." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).

### III. Complete Preemption

The general removal statute, 28 U.S.C. § 1441(a), grants district courts jurisdiction over state court actions that originally could have been brought in federal court. Section 1331 provides district courts original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."

Under the canonical well-pleaded complaint rule, "a suit 'arises under' federal law for 28 U.S.C. § 1331 purposes 'only when the plaintiff's statement of his own cause of action shows that it is based upon federal law.'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (alteration omitted) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). Notwithstanding this rule, when a federal statute wholly displaces state law and provides the exclusive cause of action for a plaintiff's requested relief, we must "recharacterize a state law complaint . . . as an action arising under federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987). In such cases, federal law "completely preempts" the state law claims. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983).

Two provisions in the National Bank Act, 12 U.S.C. §§ 85–86, completely preempt state law claims challenging interest rates charged by national banks. *Beneficial Nat'l*, 539 U.S. at 10–11. Section 85 allows a national bank to impose interest at the rate authorized by the state in which the bank is "located" or "at a rate of 1 per centum in excess of the

discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater."  If a national bank knowingly charges a rate that exceeds this limit, section 86 authorizes the borrower to recover double damages on the excess interest paid, and the lender forfeits any right to outstanding interest payments.

### A.

The Attorney General first contends that in finding complete preemption, the district court erred by relying on declarations submitted by the card providers describing their payment protection plans.[3]  We disagree.

Federal courts typically may only look to the plaintiff's complaint to determine federal question jurisdiction.  *See Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1016 (9th Cir. 2011).  However, when a defendant asserts that a claim is completely preempted, examination of extra-pleading material is permitted.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004) (reading the complaint and "various plan documents" to determine if a claim was completely preempted); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983) (reviewing "additional facts in the petition for removal" to find a claim completely preempted), *overruled on other grounds by Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1246 (9th Cir. 2009).

---

[3] The Attorney General also argues that only the three banks that submitted declarations can rely on them.  But, the district court did not abuse its discretion in finding that "Defendants have presented joint arguments regarding the nature of the plans offered by all of the banks."  *Louie*, 907 F. Supp. 2d at 1211.

This makes doctrinal sense—the complete preemption doctrine is "an exception . . . to the well-pleaded complaint rule." *Davila*, 542 U.S. at 207.

In any event, the supposed error was harmless; the declarations restated facts already recited in the complaints. *Cf. H.K. Supermarket v. Kizer*, 830 F.2d 1078, 1080 n.1 (9th Cir. 1987) (considering extra-pleading material is harmless if dismissal under Federal Rule of Civil Procedure 12(b)(6) would be proper when reviewing the complaint alone).

**B.**

The Attorney General next argues that payment protection plan fees are not "interest" on a loan under § 85, but rather charges for an independent service. This argument has somewhat more purchase.

The Office of the Comptroller of the Currency (OCC) has defined "interest" in § 85 as:

> any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily

include appraisal fees, premiums and
commissions attributable to insurance
guaranteeing repayment of any extension of
credit, finders' fees, fees for document
preparation or notarization, or fees incurred to
obtain credit reports.

12 C.F.R. § 7.4001(a). The Supreme Court approved this
definition in *Smiley v. Citibank (South Dakota), N.A.*, holding
that the examples in § 7.4001(a) drew a reasonable distinction
between (a) expenses that "are assessed for simply making
the loan, or for the borrower's default," and (b) fees
"*specifically assigned*" to services incidental to the loan, such
as reimbursements for processing an application, premiums
tied to loan insurance, and appraisal costs. 517 U.S. 735,
741–42 (1996).

Like the Fifth Circuit and the OCC, we doubt that
payment protection plan fees are interest. *See Hood ex rel.
Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 90–92
(5th Cir. 2013) (per curiam) (suggesting that payment
protection plan fees are not interest); Debt Cancellation
Contracts and Debt Suspension Agreements, 67 Fed. Reg.
58,962, 58,694 (Sept. 19, 2002) ("The OCC's regulations
reflect the fact that national banks may set [payment
protection plan] fees . . . . Section 7.4002 of our rules
authorizes national banks to establish *non-interest* charges
and fees 'according to sound banking judgment and safe and
sound banking principles.'" (emphasis added) (quoting
12 C.F.R. § 7.4002)). But we leave this question for another
day. Even assuming that protection plan fees are interest, the
complaints here did not allege that the card providers charged
excessive interest rates.

## C.

For the complete preemption doctrine to apply, one of the Attorney General's state law claims must be governed by §§ 85 and 86. *Beneficial Nat'l*, 539 U.S. at 7–8. The Attorney General argues this is not the case here, because those sections only preempt claims that explicitly invoke a state usury law.

At first glance, this argument has some attraction. In *Beneficial National*, the plaintiffs "expressly charged" that a national bank violated state usury laws. 539 U.S. at 9. The Supreme Court held that §§ 85 and 86 "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id.* at 11.

But, on close analysis, the Attorney General's argument founders. Section 85, without using the word "usury," sets the rate of interest that a national bank may charge. Section 86 uses the word "usurious" to define a limitations period, but creates a right of action for plaintiffs charged "a rate of interest greater than is allowed by section 85." Congress enacted these provisions so that a national bank could "charge its out-of-state credit-card customers an interest rate on unpaid balances allowed by its home State, when that rate is greater than that permitted by the State of the bank's nonresident customers." *Marquette Nat'l Bank of Minn. v. First of Omaha Serv. Corp.*, 439 U.S. 299, 301 (1978). Thus, when a plaintiff alleges that a national bank charged "a rate of interest greater than is allowed," the claim falls within the scope of §§ 85 and 86, regardless of the state law term invoked.

That the plaintiffs in *Beneficial National* happened to invoke "expressly" Alabama's usury statute does not mean that the National Bank Act only preempts complaints that cite a state usury law. Federal courts are not bound by the labels that litigants attach to completely preempted claims. In *Davila*, for example, plaintiffs attempted to evade complete preemption under section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), by insisting that their actions sounded in tort. 542 U.S. at 214–15. The Supreme Court declined the gambit, holding that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims.'" *Id.* at 214 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)); *see also Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001) (holding that claimants cannot escape complete preemption by "dressing up" their claims).

We, therefore, must decide whether the complaints challenged the "rate of interest" that the card providers charged, regardless of the state law monikers affixed to the Attorney General's claims. We conclude that they did not.

Counts I and II alleged that the card providers violated sections 480-2(d), 480-13.5, and 481A-3 of the Hawaii Revised Statutes, which govern business disclosure, contractual terms, and trade practices. None of these provisions proscribes the interest that a financial institution may charge.

Nor did the third count—the unjust enrichment claim— challenge the card providers' interest rates. This count

merely alleged that Hawaii residents unjustly enriched their card providers by "unknowingly paying unauthorized or otherwise improper charges." Indeed, the Attorney General could not, under Hawaii law, assert that the card providers unjustly charged excessive interest rates. *See Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1117–18 (D. Haw. 2011) (holding that under Hawaii law, "express contracts . . . preclude an unjust enrichment claim" when plaintiffs alleged that banks charged excessive interest rates); *Porter v. Hu*, 169 P.3d 994, 1006 (Haw. Ct. App. 2007) ("[A]n action for unjust enrichment cannot lie in the face of an express contract . . . .").

The monetary remedies requested for these violations— civil penalties and restitution—may well require the card providers to disgorge any financial gain from the fees. But if a plaintiff asserts a usury claim simply by virtue of requesting damages, the states' settled authority "to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law" would be rendered meaningless. *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002).

The defendants nevertheless insist that the complaints implied that Hawaii consumers were charged excessive interest rates. They note the complaints alleged that card holders received "virtually no benefit" from the card providers' debt protection products, that the providers purposefully marketed these products to make "substantial sums of money," and that the providers charged "over-the-limit fees."

Read in context, however, these allegations are most consistent with a Uniform Deceptive Trade Practice Act

claim.   Subsection 481A-3(a)(5) defines a deceptive trade practice as "[r]epresent[ing] that goods or services have . . . uses, benefits or quantities that they do not have."   In pleading a violation of this subsection, the Attorney General properly alleged that the card providers represented that their services would prevent consumers from defaulting, but, in fact, the plans did not provide that benefit.

The Attorney General *could have* claimed that the card providers charged excessive fees.  But he did not; even if the facts in the complaints might support a § 86 claim, that does not mean the Attorney General pleaded one.  Again, *Davila* provides useful guidance.  The Court there held that ERISA completely preempts a state law claim "if an individual, at some point in time, could have brought his claim under" the federal statute, *and* "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 394–95 (1987) (holding the same under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185).

The state law claims here were independent of and did not "merely duplicate[] rights and remedies available under" §§ 85 and 86.  *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1111 (9th Cir. 2011).  The unfair and deceptive practice claims targeted alleged marketing misrepresentations.  The unjust enrichment claims arose from the purported failure to obtain consent before enrolling consumers in debt protection products.  Regardless of the rates charged, the banks had independent state law obligations to obtain consent from and not to deceive consumers.  These claims are not preempted by the National Bank Act.

In reaching this conclusion, we join the Fifth Circuit.[4] In *Hood*, the Mississippi Attorney General alleged that credit card providers violated the Mississippi Consumer Protection Act. 737 F.3d at 82–83. The complaints asserted that payment protection plans "have little value to certain customers" and that "the Plans can trigger over-the-limit fees." *Id.* at 93 & n.14. The Fifth Circuit held that §§ 85 and 86 did not completely preempt the claims, as "there is a difference between alleging that certain customers are being

---

[4] A number of district courts also agree. *See, e.g.*, *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 993 (S.D.W. Va. 2012) ("[E]very allegation that an interest charge is improper need not be an allegation that it is usurious; such a rule would consume *any* state fraud action involving an 'interest' product."); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1021 (S.D. Iowa 2009) ("[T]he basis of the alleged excessiveness is that Wells Fargo charged fees when they should not, a wholly different claim from a claim that Wells Fargo applied an illegal interest rate."); *Anderson v. Ocwen Fin. Corp.*, No. CIVA 4:05CV243 MB, 2006 WL 1515682, at *1 (N.D. Miss. May 26, 2006) ("[A]llegations of '[e]xcessively high and/or false points, closing costs and service charges' with no mention of 'usury' does not constitute a state law usury claim for complete preemption purposes." (second alteration in original)); *Cortazar v. Wells Fargo & Co.*, No. C 04-894 JSW, 2004 WL 1774219, at *1, *4–5 (N.D. Cal. Aug. 9, 2004) (holding that unjust enrichment and consumer protection claims, which alleged banks "induced borrowers to enter into unfavorable loans with 'above-market interest rates' and 'exorbitant' points and fees," were not completely preempted); *Cross-Cnty. Bank v. Klussman*, No. C-01-4190-SC, 2004 WL 966289, at *6 (N.D. Cal. Apr. 30, 2004) ("Plaintiff does not challenge the legality of the *rate* of interest charged by Defendants. Rather, Plaintiff claims that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in short, should never have been charged at all.").

charged too much, and alleging that they should have never been charged for the service in the first place." *Id.* at 93.[5]

We conclude that the Attorney General did not plead a completely preempted claim and that the district court therefore erred in finding federal question jurisdiction. We now turn to whether CAFA provides an alternative basis for jurisdiction.

## IV. CAFA

### A.

The Attorney General's certification motion raised two questions, neither of which concerns CAFA. Section 1292(b), however, grants appellate jurisdiction over interlocutory orders, not questions, and we "may address any issue fairly included within the certified order." *Yamaha*

---

[5] The district court decisions marshaled by the card providers are not to the contrary. In those cases, the complaints expressly alleged that financial institutions had charged excessive interest rates. *See, e.g.*, *Forness v. Cross Country Bank, Inc.*, No. 05-CV-417-DRH, 2006 WL 240535, at *3 (S.D. Ill. Jan. 13, 2006) (noting Plaintiffs admitted "that they do, in part, challenge the amount of Defendants' fees"); *Austin v. Provident Bank*, No. CIV.A.4:04 CV 33 P B, 2005 WL 1785285, at *1, *5 (N.D. Miss. July 26, 2005) (finding a claim alleging a bank provided "overpriced loans at interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing" completely preempted (internal quotation marks omitted)); *Santos v. Household Int'l, Inc.*, No. C03-1243 MJJ, 2003 WL 25911112, at *3 (N.D. Cal. Oct. 24, 2003) (holding a cause of action asserting an "over limit fee was unconscionable because it was a flat rate fee that was too high" completely preempted); *Hill v. Chem. Bank*, 799 F. Supp. 948, 950, 954 (D. Minn. 1992) (holding a claim alleging excessive late fees and over limit fees completely preempted).

*Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Because the certified order denied the motions to remand for lack of subject matter jurisdiction, we may affirm if the district court had any basis of jurisdiction. *See Lumber Prod. Indus. Workers Local No. 1054 v. W. Coast Indus. Relations Ass'n, Inc.*, 775 F.2d 1042, 1047 (9th Cir. 1985). We therefore exercise our discretion to address CAFA jurisdiction.

## B.

CAFA grants district courts original jurisdiction over "a class action" if the class has more than 100 members, the amount in controversy is greater than $5,000,000, and the parties are minimally diverse. 28 U.S.C. § 1332(d)(2), (5)(B). A "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B). Because these complaints were not filed under Federal Rule 23, the issue is whether the Attorney General filed them under a "similar" state rule or statute.

The complaints asserted that the Attorney General brought these actions under: (1) subsection 480-2(d), which provides that "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts declared unlawful by this section"; (2) section 661-10, which allows the Attorney General to "bring and maintain an action" in order "to collect or recover any money or penalty . . . or enforce any other right"; and (3) the Attorney General's "*parens patriae* authority."

These state procedural devices are not similar to a Rule 23 action.  Subsection 480-2(d) identifies who may bring an action; it does not state the form an action must take.  Section 661-10 grants the Attorney General the authority to bring civil enforcement actions, which are not class actions.  *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 322–25 (1980).  And, a common law *parens patriae* suit is not a procedural device similar to Rule 23.  *Chimei Innolux*, 659 F.3d at 847–49; *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 739 (2014) (holding that a *parens patriae* suit is not a CAFA mass action).

The card providers, however, contend that under subsection 480-14(b), any action brought by the Attorney General on behalf of consumers is perforce a class action. That statute provides: "The attorney general . . . may bring a class action on behalf of consumers based on unfair or deceptive acts or practices declared unlawful by section 480-2.  Actions brought under this subsection shall be brought as parens patriae . . . ."  Although the complaints "specifically disclaim[ed]" class status, the card providers insist that we ignore those disclaimers and transmogrify these suits into class actions.

We decline the invitation.  As the district court noted, the card providers may well have the better reading of Hawaii law, and the Attorney General's attempt to bring these actions while disclaiming class status may fail under state law. Nonetheless, we cannot disregard the complaints' unambiguous class action disclaimers.[6]  To be removable

---

[6] At oral argument, the Attorney General represented that he will not attempt to make this case a class action, regardless of how litigation proceeds on remand.

under CAFA, a "class action" must be "filed under" Rule 23 or a state law equivalent. § 1332(d)(1)(B). The appropriate inquiry is therefore whether a complaint seeks class status. Accordingly, we have held that a plaintiff files a class action for CAFA purposes by invoking a state class action rule, regardless of whether the putative class ultimately will be certified. *United Steel Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010).

The converse is also true: Failure to request class status or its equivalent is fatal to CAFA jurisdiction. In *Baumann v. Chase Investment Services Corp.*, for example, the defendants argued that California Private Attorney General Act (PAGA) "actions are 'class actions' under CAFA because PAGA is a state procedural law that would be displaced by Rule 23 in federal court." 747 F.3d 1117, 1124 (9th Cir. 2014). We rejected the argument, holding that the issue "is simply one of statutory construction—whether the action sought to be removed was '*filed under*' a state statute 'similar' to Rule 23." *Id.* As the plaintiff's complaint was brought under PAGA, a statute not similar to Rule 23, it was irrelevant that the action might later be converted to a class action if removed. *Id.*

The Supreme Court's recent decision in *AU Optronics* is also instructive on this point. In interpreting CAFA's mass action provisions, the Court cautioned that CAFA largely incorporates "certain" traditional exceptions to the general rule that the plaintiff is the master of a complaint for jurisdictional purposes. 134 S. Ct. at 745–46. For example, plaintiffs may not fraudulently join a non-diverse party, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001), collusively assign an interest in a case, *Wheeler v. City & Cnty. of Denver*, 229 U.S. 342, 349 (1913),

improperly treat a state as a real party in interest, *Mo., Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 61 (1901), or avoid CAFA removal by promising, before class certification, to seek less than $5,000,000 in damages, *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013).

Here, the only relevant exception to the rule that "the party who brings a suit is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913), is the complete preemption doctrine. As CAFA does not completely preempt state law, we cannot ignore the complaints' disclaimers and convert these cases into class actions.

Our sister circuits agree.[7] In *Purdue Pharma L.P. v. Kentucky*, the Kentucky Attorney General brought various state law claims on behalf of Kentucky consumers, invoking the State's "*parens patriae* authority" but not a class action rule. 704 F.3d 208, 211 (2d Cir. 2013). The defendants urged the court to pierce the pleadings and recognize that "the Attorney General [was] actually relying, albeit surreptitiously, on [Kentucky's class action rule] to assert representative claims for restitution on behalf of individual consumers." *Id.* at 216 n.7. The Second Circuit rejected the argument. Even if the Attorney General "*could have* utilized some other statutory or procedural mechanism," the court was "hard pressed to understand how a suit may be 'filed under'

---

[7] So do a number of district courts. *See, e.g.*, *Nat'l Consumers League v. Flowers Bakeries, LLC.*, No. CV 13-1725 (ESH), --- F. Supp. 2d. ---, 2014 WL 1372642, at *6 (D.D.C. Apr. 8, 2014); *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 663–64 (E.D. La. 2012); *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. CV-11-131-PHX-FJM, 2011 WL 995963, at *3 (D. Ariz. Mar. 21, 2011).

a statute or rule that does not even appear on the face of the complaint." *Id.* As we do here, the Second Circuit noted that the Attorney General's claims might fail without class status, but nonetheless refused to imply that the complaint was "filed under" a state rule similar to Rule 23. *Id.* at 220 ("Whether Plaintiffs may proceed and ultimately recover on their claims presents complex questions of Kentucky law, which we only see through *Erie*'s glass darkly, and upon which we express no opinion.").

The Third Circuit followed this line of reasoning in *Erie Insurance Exchange v. Erie Indemnity Co.*, 722 F.3d 154 (3d Cir. 2013). Erie Insurance Exchange asserted state law claims "in the name of" its members, invoking Pennsylvania Rule of Civil Procedure 2152. *Id.* at 157. Because Pennsylvania law prohibits insurance exchanges from suing under Rule 2152, the defendants argued that the Exchange actually had brought a class action. *Id.* at 158–59. The Third Circuit refused to "rewrite the Complaint to create jurisdiction under the pretense of correcting a state-law error," holding that plaintiffs "are the masters of their complaints and are 'free to choose the statutory provisions under which they will bring their claims.' If the case is procedurally unsound under Pennsylvania's rules, the Commonwealth's courts are best suited to correct the problem." *Id.* at 159 (citation omitted) (quoting *Purdue Pharma*, 704 F.3d at 216 n.7).

The Fourth Circuit also agrees. In *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, the West Virginia Attorney General filed a *parens patriae* suit against several pharmacies, alleging violations of state law. 646 F.3d 169, 171–72 (4th Cir. 2011). The dissent would have found the action removable under CAFA because the Attorney General

had not asserted a valid *parens patriae* claim and "because the essential requirements of a class action [were] met." *Id.* at 183 (Gilman, J., dissenting). The panel majority, however, explained that the relevant question is not whether the suit could be sustained as a *parens patriae* action under state and federal law. *Id.* at 176 n.2. Rather, the "separate, and more meaningful determination" was if the action was "*brought* under a procedure 'similar' to Rule 23." *Id.* (emphasis added).[8]

Indeed, were we—as the card providers request—to evaluate the "substance" of the pleadings, the result would be the same. "To maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity. The grant, *sua sponte*, of class action relief when it is neither requested nor specified, is an obvious error." *Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1976) (citations omitted); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1785 (3d ed. 2005) ("[A court] cannot convert an individual action into a class action on its own motion."). Moreover, a plaintiff who denies having

---

[8] *Addison Automatics, Inc. v. Hartford Casualty Insurance Co.*, 731 F.3d 740 (7th Cir. 2013), is not to the contrary. In *Addison*, a plaintiff filed a class action against Domino Plastics. Domino stipulated to liability and assigned its claims against its liability insurer to the lead plaintiff as class representative. *Id.* at 741. The lead plaintiff then filed suit against the liability insurer in state court but explicitly disclaimed class status. *Id.* at 742. The Seventh Circuit held that the plaintiff had filed a class action because he remained "the representative of a class that was actually certified 'under Rule 23 or the state equivalent,'" and any ruling would necessarily be in "favor of the Class." *Id.* at 742, 744 (internal quotation marks omitted) (quoting *LG Display Co. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011)).

brought a class action surely cannot adequately represent the purported class, *see E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977), and "the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed [plaintiffs are] critical requirements in federal class actions under Rules 23(a)(4) and (g)," *Baumann*, 747 F.3d at 1122.

Because the complaints unambiguously disclaimed class status, these actions cannot be removed under CAFA.  There is therefore no basis for federal jurisdiction, and the cases should have been remanded to state court.

## V. Conclusion

For the foregoing reasons, the judgment of the district court is **REVERSED**, and we **REMAND** with instructions to remand these actions to state court.